**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JACK C. DALLAS, JR., | ) | |
| | ) | CASE NO. 1:13-cv-00591 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Jack C. Dallas, Jr. ("Dallas ") challenges the final decision of the Acting

Commissioner of Social Security, Carolyn W. Colvin ("Commissioner"), denying his claim for a

Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security

Income ("SSI") under Title(s) II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§

416(i), 423, 1381 *et seq.*  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the

consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED

and the case is REMANDED for further proceedings consistent with this opinion.

## I.  Procedural History

On November 9, 2009, Dallas filed an application for POD, DIB, and SSI alleging a

disability onset date of June 1, 2004.  (Tr. 92.)  His application was denied both initially and upon reconsideration.  Dallas timely requested an administrative hearing.

On October 19, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Dallas, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 92.)  On November 18, 2011, the ALJ found Dallas was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 106-108.)  The ALJ's decision became final when the Appeals Council denied further review.

## II. Evidence

***Personal and Vocational Evidence***

Age forty (40) at the time of his administrative hearing, Dallas is a "younger" person under social security regulations.  *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).  Dallas has a limited education and past relevant work as a dishwasher, landscaper, bricklayer helper, and machinist.  (Tr. 105.)

***Relevant Medical Evidence***[1]

On December 1, 2009, Dallas began treatment with Jessica Griggs, D.O., complaining of shoulder pain, back pain, and leg numbness after prolonged sitting.  (Tr. 597.)  Dr. Griggs ordered an x-ray of the thoracic lumbar spine.  *Id.*  The x-ray results were not significantly different from an x-ray taken in August of 2008.  (Tr. 476.)  There were no acute fractures or destructive osseous lesions; no paraspinal masses, and disc spaces were maintained.  *Id.*  There

---

[1] As the ALJ's compliance with the treating physician rule is dispositive, discussed *infra*, the Court's recitation of the facts is limited to the treatment rendered by Jessica Griggs, D.O. Dallas's brief does not comply with this Court's Initial Order, as it fails to set forth all facts relevant to the legal issues raised.  (ECF No. 5.)  Therefore, this Court incorporates the facts surrounding Dr. Griggs's treatment of Dallas from the Commissioner's brief.

was mild T8 superior end plate deformity and minimal spurring.  *Id*.  Dr. Griggs also ordered shoulder x-rays, which revealed acromioclavicular (AC) joint arthropathy in both shoulders, but only at a mild level in the left one.  (Tr. 477-78.)  There were no other abnormalities in the right shoulder.  (Tr. 477.)  The left shoulder x-ray was suggestive of mild osteoarthritis.  (Tr. 478.)

On March 8, 2010, Dallas indicated that he never picked up his previous prescriptions for Tramadol and Loratidine.  (Tr. 594.)  Dr. Griggs assessed spina bifida occulta and provided new prescriptions.  *Id*.

On May 14, 2010, Dallas reported to Dr. Griggs that the medication made him drowsy and weak.  (Tr. 586.)  He also complained that he had problems standing and sitting for long periods at a time.  *Id*.  The straight leg-raising test was positive on the right.  *Id*.  On the same date, Dr. Griggs also completed a form for the Ohio Department of Job & Family Services in which she indicated that Dallas, in an eight-hour workday, could lift/carry up to five pounds frequently/occasionally; stand/walk one hour in twenty minute increments; sit for one hour in five minute increments; and, had marked limitations in pushing/pulling, bending, and reaching. (Tr. 627.)  She further opined that Dallas's limitations were expected to last twelve months or more, and that he was unemployable.  *Id*.

On July 2, 2010, Dr. Griggs saw Dallas for a follow-up visit after four visits to the emergency room.  (Tr. 580.)  It was noted that Dallas had a new disability lawyer who wanted him to see a psychiatrist.  *Id*.  Dr. Griggs assessed chronic lower back pain.  *Id*.  She ordered an MRI of the lumbar spine, which revealed a disc bulge or small protrusion at L5-S1 and minimal ventral ridging at L3-4 without any impingement or compromise of the L5 nerve roots.  (Tr. 632.)

3

On September 22, 2010, Dr. Griggs completed a Medical Source Statement regarding Dallas's physical abilities.  (Tr. 604-06.)  Dr. Griggs indicated that Dallas could lift zero to five pounds occasionally/frequently; stand a total of one hour per day in fifteen minute increments; sit a total of two hours per day in thirty minute increments; occasionally balance, stoop, reach; and, never work around dangerous equipment or tolerate heat, cold, dust, smoke, or fumes.  *Id.* In addition, Dallas needed to elevate his legs for more than two hours per workday as well as lie down more than two hours per workday.   (Tr. 605.)  She further indicated that Dallas's back pain would "frequently" interfere with the attention and concentration needed to perform even simple tasks, and that he would likely be absent four or more days per month.  *Id.*  In a narrative statement, Dr. Griggs noted that Dallas had "chronic LBP [lower back pain]; spina bifida occulta hx per MRI lumbar spine."  (Tr. 606.)  She further indicated that Dallas had "[d]ifficulty sitting, walking, and standing for long periods of time controlled with meds; Pt to follow up with physical therapy [and] neurosurgery referrals."  *Id.*

In October of 2010, Dr. Griggs referred Dallas to Sanjay Kumar, D.O., for an evaluation of his back and leg pain.  (Tr. 653.)

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Dallas was insured on his alleged disability onset date, June 1, 2004 and remained insured through the date of the ALJ's decision. (Tr. 95.) Therefore, in order to be entitled to POD and DIB, Dallas must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

5

## IV.  Summary of Commissioner's Decision

The ALJ found Dallas established medically determinable, severe impairments, due to borderline intellectual functioning, degenerative joint disease, and degenerative disc disease. (Tr. 95.)  However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  (Tr. 96.)  Dallas was found incapable of performing his past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work.  (Tr. 100, 105.)  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Dallas was not disabled.  (Tr. 106-108.)

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d

6

762, 772-3 (6ᵗʰ Cir. 2001) (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6ᵗʰ Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6ᵗʰ Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6ᵗʰ Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8ᵗʰ Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6ᵗʰ Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6ᵗʰ Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7ᵗʰ Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  Analysis

Dallas claims the ALJ erred by: (1) refusing to accept a Verbal Comprehension Index Score; (2) failing to find deficits in adaptive functioning; (3) violating procedural due process; (4) failing to give good reasons for discounting the weight of his treating physician; (5) failing to evaluate or incorporate certain portions of the opinions of state agency psychologists; and, (6) relying upon the speculative testimony of the vocational expert.  (ECF No. 19.)

### *Treating Physician*

The Court addresses the fourth assignment of error first.  Dallas argues the ALJ failed to provide "good reasons" for rejecting the opinions of his treating physician, Dr. Griggs.  (ECF No. 19 at 10-12.)  He maintains the ALJ's conclusion – that Dr. Griggs's opinion is based entirely upon Dallas's complaints and not supported by truly objective findings – does not constitute a "proper, specific" reason under the regulations.  (ECF No. 19 at 11.)  Dallas asserts that Dr. Griggs's opinion as to his functional limitations was based upon clinical findings from three examinations and objective medical evidence.  *Id.*

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record."  *Meece v. Barnhart*, 2006 WL 2271336 at * 4 (6th Cir. Aug. 8, 2006); 20 C.F.R. § 404.1527(c)(2).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled

8

to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 2006 WL 2271336 at * 4 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Indeed, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[3]

If the ALJ determines a treating source opinion is not entitled to controlling weight, "the ALJ must provide 'good reasons' for discounting [the opinion], reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Ruling 96-2p, 1996 SSR LEXIS 9 at * 5).  The purpose of this requirement is two-fold. First, a sufficiently clear explanation "'let[s] claimants understand the disposition of their cases,' particularly where a claimant knows that his physician has deemed him disabled and therefore 'might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied.'" *Id*. (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.  Because of the significance of this requirement, the Sixth Circuit has

---

[3]  Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

held that the failure to articulate "good reasons" for discounting a treating physician's opinion "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Nevertheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406. The ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 404.1527(d)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The Commissioner contends that the ALJ was correct in his assessment that Dr. Griggs's opinions were inconsistent with the evidence, including her own treatment notes[4] and relatively

_____

[4] The ALJ's decision does not state that Dr. Griggs's opinion was inconsistent with her own treatment notes. Rather, as discussed below, the ALJ essentially found that the medical tests supporting Dr. Griggs's opinion were unreliable. The ALJ appears to believe that Dallas's

benign objective evidence.  (ECF No. 21 at 17-18.)  However, the Commissioner's argument

does not rely on the ALJ's opinion.  Instead, the Commissioner points to various portions of the

medical evidence of record that she believes supports the ALJ's conclusion.  *Id.*  Defense

counsel's argument cannot be substituted for the reasons actually offered by the ALJ.  As this

Court has previously noted, "arguments [crafted by defense counsel] are of no consequence, as it

is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is

under the Court's consideration."  *See, e.g., Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635,

27-28 (N.D. Ohio, Oct. 31, 2007) (*citing NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 715,

n. 1, 121 S.Ct. 1861, 149 L.Ed.2d 939, (2001)); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.

1996); *cf. Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1113 (6th Cir. 1986)

(rejecting Defendant's *post hoc* rationale that obesity is *per se* remediable where there was no

factual basis or findings of fact in the record to support such an argument).

   In the actual opinion, the ALJ stated as follows: "As for the opinion evidence regarding

the claimant's physical limitations, little weight is given to the opinion of the treating family

physician, Dr. Griggs, which appears to be based entirely on the claimant's complaints."  (Tr.

103.)  After summarizing the limitations assessed by Dr. Griggs, the ALJ concluded that "[t]hese

extreme limitations are not supported by truly objective findings.  Dr. Griggs noted findings of

positive straight leg raising and limitation of motion, both of which are within the claimant's

control."  *Id.*  After discussing some of the other medical evidence of record, the ALJ concluded

that Dallas's "complaints to Dr. Griggs and [his] testimony as to his limitations at the hearing

---

responses during testing were not candid.

11

were obviously for the purpose of supporting his disability claim and are not credible."[5]  (Tr. 104.)

Though the ALJ does not explain why, reading his opinion as a whole, it is clear that he believed Dallas gave false or deceptive responses during tests administered by various physicians, including Dr. Griggs, as well as a physical therapist.  (Tr. 103-04.)  The ALJ emphasized that these tests were within Dallas's "control."  *Id*.  While the Court understands that certain tests may be mostly or even entirely subjective, it is unclear how the ALJ reasoned that Dallas was manipulating the tests results or why the medical professionals failed to reach the same conclusion.  Neither party cites any law as to whether it is proper for an ALJ to reject a treating physician's opinion based on the ALJ's finding that underlying medical tests were unreliable.

Some courts have found that a physician's opinion, "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations may be disregarded where those complaints have been properly discounted."  *Reinertson v. Barnhart*, 127 Fed. App'x. 285, 290 (9th Cir. 2005) (internal quotation marks omitted) (*citing Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 602 (9th Cir. 1999)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (finding that ALJ did not err by disregarding the opinion of a treating physician where the limitation in question appeared to be based not upon his own medical conclusion, but upon the conclusion of a different doctor and the claimant's self assessment); *Tate v. Comm'r of Soc. Sec.*, 467 Fed. App'x 431, 433 (6th Cir. 2012) (finding no error where the ALJ discounted a

---

[5]  At another point in the decision, the ALJ states that Dallas's self-reported limitations were "exaggerated."  (Tr. 105.)

treating doctor's opinion because there were substantial gaps in treatment and where the doctor's assessment appeared to be based on claimant's subjective complaints without sufficient support from objective clinical or neurological findings).

This case, however, is distinguishable. The ALJ not only discounted Dr. Griggs's opinions because they were, in part, based on Dallas's subjective complaints, but further rejected the results of recognized medical tests performed by the treating physician that supported the conclusions reached. The ALJ reasoned that the tests in question are capable of being manipulated because they are within a patient's "control." (Tr. 104-104.) Though the ALJ did not say so explicitly, the inescapable conclusion is that the ALJ believed Dallas gave untruthful responses during straight leg raises and range of motion tests. What remains unclear, is how the ALJ came to such a conclusion. "An ALJ cannot substitute his own opinion for that of the medical experts by disregarding evidence in the record. 'Sheer disbelief is no substitute for substantial evidence.'" *Winkowitsch-Smith v. Barnhart*, 113 Fed. App'x 765, 767 (9th Cir. 2004) (*citing Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)). Moreover, "[a court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The Court is unable to trace the path of the ALJ's reasoning because the decision fails to explain how the ALJ arrived at the critical conclusion – that the tests performed by several doctors including at least one treating physician were unreliable. While the ALJ unequivocally found Dallas not credible (Tr. 104-105), the ALJ failed to explain in any meaningful manner as

to how he arrived at this conclusion.[6]

In addition, the Commissioner argues that Dr. Griggs's opinion was inconsistent with the state agency medical experts.  (ECF No. 21 at 18.)  This Court has previously ruled that an ALJ cannot base his or her rejection of a treating physician's opinion upon its inconsistency with the opinions of non-treating physicians.  *See Brewer v. Astrue*,  2011 WL 2461341 at *7 (N.D. Ohio Jun. 17, 2011) ("To do so would turn the treating physician rule on its head [as] [i]t is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician."), *citing Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians"); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")  As recently explained by the Sixth Circuit Court of Appeals:

---

[6]  While not raised as a separate assignment of error, it is questionable whether the ALJ's credibility analysis was sufficiently specific under Social Security Ruling ("SSR") 96-7p. Though an ALJ's credibility findings are entitled to considerable deference, *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987), "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for the weight." SSR 96-7p, 1996 SSR LEXIS 4, Purpose section; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.")

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.  Such a rule would turn on its head the regulation's presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th 2013).

As such, the ALJ's recitation of evidence from non-treating sources is insufficient to satisfy the "good reasons" requirement.

The Court finds that the ALJ erred by not giving good reasons for rejecting the functional limitations assessed by Dallas's treating physician, Dr. Griggs.  Dallas's remaining assignments of error are rendered moot and will not be addressed in the interests of judicial economy.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence.  Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

<u>/s/ Greg White</u>
U.S. Magistrate Judge

Date: December 16, 2013